**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**WANDA ADAMS OWENS,**

     **Plaintiff,**

**vs.**                               **CASE NO. 1:20-CV-00062-AW-MAF**

**ANDREW SAUL, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**

     **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Social Security case was referred to the Undersigned for further proceedings by order of the Court pursuant to ECF No. 6. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act.

For the reasons set forth below, it is recommended that the decision of the Commissioner be AFFIRMED, and the case be CLOSED.

## I.  Procedural History

On August 22, 2017, Plaintiff, Wanda Adams Owens, filed an application for a period of disability and disability insurance benefits, alleging

her disability began on May 20, 2017. Tr. 43.[1] The claims were denied on October 5, 2017, and upon reconsideration on November 29, 2017. Tr. 43.

At Plaintiff's request, Administrative Law Judge (ALJ), William H. Greer, held a hearing on April 10, 2019. There, Plaintiff was represented by L. Jack Gibney, Esq. Tr. 60-79. Plaintiff and Stephen Davis, an impartial vocational expert (VE) testified at the hearing. Tr. 63-75 (Plaintiff's testimony); Tr. 76-78 (Davis' testimony); Tr. 341-43 (Davis' CV). Also, during the hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims. Tr. 62. The ALJ considered the entire record including Plaintiff's medical records, opinion evidence, Plaintiff's testimony, and the testimony of the VE. Tr. 43-44. The ALJ issued a decision on April 18, 2019, denying Plaintiff's application for benefits. Tr. 43-58.

Plaintiff requested review from the Appeals Council on April 22, 2019. Tr. 33-34. On February 13, 2020, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1-7. Plaintiff filed her Complaint with this Court on March 12, 2020. ECF No. 1. Defendant filed an Answer on October 22, 2020. ECF No. 16. The parties filed memoranda of law, which have been considered. ECF Nos. 20, 21.

---

[1] Citations to the transcript/administrative record, ECF No. 17-2, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

## II.    Plaintiff's Claims

Plaintiff claims, generally, that the decision to deny her disability benefits is not supported by substantial evidence and is contrary to law and regulation. ECF No. 1. Specifically, Plaintiff claims:

1. The administrative law judge erred because he did not properly consider the effects of Plaintiff's pain in determining that she was not disabled. ECF No. 20, p. 7.

2. The ALJ discounted the opinion of Dr. Roberts without explaining his reasoning. Id., pp. 7-11.

Accordingly, Plaintiff maintains that the Commissioner's decision "should be reversed." Id., p. 11.

The Commissioner argues that there is substantial evidence to support the ALJ's decision. ECF No. 21. The ALJ's decision specifically stated the RFC assessment including Plaintiff's limitations due to her back and leg pain. Id., p. 1. The Commissioner also argues that, despite Plaintiff's assertions that the pain affected her attention and concentration and that her medications cause drowsiness, these complaints are not substantiated by the medical record. Id., pp. 2, 8. Rather, Plaintiff was alert at her medical appointments. Id., p. 2. The Commission further maintains that the ALJ articulated that the RFC assessment included limitations to accommodate Plaintiff's leg and back pain; explained why he discounted portions of Dr.

Roberts' opinion; and considered the intensity, persistence, and limiting effects of Plaintiff's pain symptoms. Id., pp. 8-12. Therefore, the ALJ appropriately considered Plaintiff's pain pursuant to the regulations and the Eleventh Circuit's pain standard and there was substantial evidence to support the ALJ's finding. Id., pp. 15, 19.

## III.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, <u>Bloodsworth</u>, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see</u> 20 C.F.R. § 404.1509 (duration requirement); <u>Barnhart v. Walton</u>, 535 U.S. 212, 223-224 (2002).

---

his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

In addition, an individual is entitled to disability insurance benefits (DIB) if she is under a disability prior to the expiration of his insured status. <u>See</u> 42 U.S.C. § 423(a)(1)(A); <u>Moore</u>, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. <u>Id</u>. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); <u>see</u> Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. *See generally* <u>Bagliere v. Colvin</u>, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of

weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good

cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436,

1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of your medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and

frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A]

medical professional who has dealt with a claimant and his maladies over a

long period of time will have a deeper insight into the medical condition of

the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records.'" Id. (citing Barker v.

Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight

to the opinion of the treating physician must be supported by substantial

evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must

be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify

what weight is given to a treating physician's opinion and any reason for

giving it no weight, and failure to do so is reversible error." MacGregor v.

Bowen, 786 F.2d 1050, 1053 (1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." <u>Lewis</u>, 125 F.3d at 1440; <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991) (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986). However, if the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." <u>Hunter v. Soc. Sec. Admin. Comm'r</u>, 808 F.3d 818, 823 (11th Cir. 2015).

## IV.  Legal Analysis

A. <u>Findings of the Administrative Law Judge (ALJ)</u>

The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff suffered from severe impairments: "spine disorders; [and] obesity," which "significantly limit [Plaintiff's] ability to perform basic work activities." Tr. 45-46. Plaintiff does not contest these findings as existing impairments.

The ALJ made several other findings. Plaintiff met the insured status requirements and "has not engaged in substantial gainful activity since May 20, 2017." Tr. 45. However, the ALJ determined the denial of benefits was warranted. The ALJ found that Plaintiff "does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." Tr. 46. Specifically, "the evidence does not document nerve root compromise with listing effect of serve root compression with muscle atrophy and associated weakness, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, as specified in listing 1.04." <u>Id</u>. Moreover, Plaintiff's "alleged obesity is not attended with the required clinical signs and diagnostic findings required set forth in the listings for any body system listing affected by obesity." <u>Id</u>.

Accordingly, the ALJ determined that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR § 404.1567(a) and § 416.967" with certain exceptions. Tr. 46. The ALJ noted that Plaintiff can:

> sit for 7 hours total and one hour without interruption; can stand 2 hours total, and 15 minutes without interruption; can walk 2 hours total, and 15 minutes without interruption; use simple cane if walking more than 20 feet; can lift, carry, push, and pull up to 5 pounds frequently and up to 10 pounds occasionally; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally bend, stoop, and kneel; never crouch or crawl; occasional use of foot controls; occasional reaching above shoulder level; no work at unprotected heights.

Id.

The ALJ also evaluated Plaintiff's pain but noted that "whenever statements about the, intensity persistence, and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if . . . [Plaintiff's] symptoms limit the ability to do work-related activities." Id. The ALJ considered all evidence and determined that "the overall evidence did not support the level of symptom intensity and functional limitation alleged by [Plaintiff], the record did not document lumbar instability, motor weakness, or decreased ability for movement in the extremities that would support the level of routine daily living activity restriction reported by" Plaintiff. Tr. 52.

Also, "with adjusted medication management and continued epidural injections, [Plaintiff] reported improved pain that was stable." Id. The ALJ determined that Plaintiff "is capable of performing past relevant work as a medical clerk" and was not "under a disability, as defined in the Social Security Act, from May 20, 2017." Id.

B. Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for benefits for lack of disability.

First, Plaintiff maintains that the ALJ erred because he did not consider the effects of Plaintiff's pain in making the determination she was not disabled. ECF No. 20, p. 7. Establishing a disability claim based on pain "requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant is entitled to a disability finding when the "claimant's subjective testimony [is] supported by medical evidence that satisfies the standard." Id. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Wilson, 284 F.3d at 1225 (citations omitted).

In the decision, the ALJ articulated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 46. To maintain brevity, this Report only outlines those medical records related to Plaintiff's claims.[4]

1. <u>Plaintiff's Testimony at the Hearing before the ALJ</u>

Plaintiff testified that the reason she stopped working was because of "the problem with [her]back" after falling out of bed one day. Tr. 65-66. Plaintiff explained that ten years earlier she was in a car accident, suffered a herniated disc, and was told by a physician that "down the road [she] was going to have problem[s] [with] that herniated disc." Tr. 65. Plaintiff said that she was treated by Dr. Roberts, for pain management, on a weekly basis at first and received injections. Tr. 67-68. Plaintiff reduced her visits to Dr. Roberts on a monthly basis and, finally, every six months for injections. Tr. 68. Plaintiff claims that she also uses hydrocodone for pain, "as needed," although it makes her "drowsy", so she is unable drive. <u>Id</u>., 67-68. Plaintiff testified that in the morning, without medications, her pain level is "sometimes" at a "seven/eight" on a scale of zero to ten. Tr. 69. Plaintiff

---

[4] Plaintiff's medical records include visits for unrelated conditions (Tr. 360-69, 378-79) mammogram results (Tr. 349, 394), gynecological lab results (Tr. 355-56), and other laboratory records (Tr. 380-94). There are no complaints of pain in these records.

explained that the pain is in the low part of her back and runs down into her left leg, calf, and the ankle and that she elevates her legs to alleviate swelling. Tr. 70-71. Plaintiff, who lives with her husband and mother, stated that she does not do housework, does not drive for long periods of time, can sit for approximately thirty minutes at a time, stands sometimes leaning on a wall, and uses a cane. Tr. 72-74. When grocery shopping, she leans on the shopping cart and might take one bag in the house. Tr. 71. Plaintiff testified that she uses medications, injections, elevation, and a TENS unit to alleviate her pain. Tr. 75.

2. <u>Treatment by Primary Care Physicians of Gainesville, Dr. Sanders.</u>

On July 27, 2016, Plaintiff sought care from Primary Care Physicians of Gainesville for back pain in the lower left side and was evaluated by Elizabeth Sanders, DO. Tr. 358. Plaintiff's pain was in the left flank and radiated to the side; the pain was sharp, occurred intermittently, and was "gripping and intense enough to stop her when walking." Tr. 358. The pain passed in ten to fifteen minutes; and Plaintiff compared it to labor pains. <u>Id</u>. The condition was identified as muscle cramps because, in Plaintiff's spine, there was no pain and full range of motion. 358-59. Plaintiff was prescribed hydrocodone. Tr. 359. Nearly one year later, she returned to Dr. Sanders on June 14, 2017, for pain in the lower left side of her back and down the leg,

which was persistent for two days. Tr. 81; 375. Plaintiff had a known history of an L5-S1 disc herniation. Id. Plaintiff weighed 222 pounds. Id. Elizabeth Sanders, the primary care physician, examined Plaintiff and determined she was not in acute distress, had normal muscle strength in her lower extremities, there was no paraspinous muscle spasm or tenderness over the sacroiliac region, and no pain on extension of her hips. Tr. 82; 376. Plaintiff's straight leg raise was negative. Id. Plaintiff was diagnosed with acute low back pain with sciatica and was prescribed prednisone and hydrocodone. Id.

On June 26, 2017, Plaintiff complained of low back pain and submitted to a lumbar MRI. Tr. 353; 395. In part, the MRI indicated mild degenerative disc disease at L1/L2, L2/L3, and L3/L4 with no significant narrowing. Id. However, at L5/S1, there is mild to moderate degenerative disc disease with small posterior disc osteophyte complex and severe bilateral facet arthropathy with bone marrow swelling. Tr. 354, 396. Four days later, Plaintiff returned to Dr. Sanders to discuss the MRI results. Tr. 373-74. She complained of pain when walking and that the pain was worse after sitting for prolonged periods of time. Tr. 373. Plaintiff reported she felt somewhat better after taking 600-mg ibuprofen. Id. Weakness in the extremities was noted; however, Plaintiff was not in acute distress. Id. The crossed straight leg raising was negative, left movements were painful but there was no

decrease in the range of motion. Tr. 374. Plaintiff was diagnosed with acute low back pain with sciatica and was prescribed medications. Id. During all appointments, Plaintiff was alert.

### 3. Treatment by Jacksonville Spine Center, Dr. Roberts

Plaintiff sought treatment from Jacksonville Spine Center and was treated by Dr. Roberts. Tr. 403-38, 443-59, 474-82; 485-87; 499-504. On July 20, 2017, Plaintiff complained of back pain aggravated by sitting, pain in the groin and hip going down her left leg and into the foot, severe left foot weakness in the morning, numbness, and tingling. Tr. 443. Upon examination, Plaintiff's gait, posture, and L-spine were normal; the hips were stable, her straight leg raise was negative on the right and positive on the left; and there was normal range of motion in the L-spine. Tr. 443-44. As indicated by the MRI from June 26, Plaintiff was diagnosed with L4/5 desiccation and broad bulges at L4/5 and L5/S1, lumbar radiculitis, sciatica, discogenic, herniated disc, and spondylosis. Tr. 444. Dr. Roberts set a treatment plan for Plaintiff to have lumbar epidural steroid injections (LESI) at L4/5 and noted that Plaintiff "may return to work on 08/17/2017." Tr. 445.

On July 25 and August 2, 2017, Dr. Roberts provided Plaintiff with the LESI procedures since she was not a candidate for surgical intervention. Tr. 447, Plaintiff reported some relief of her symptoms. Tr. 448, 452.

Dr. Roberts also recommended that Plaintiff include as a course of treatment anti-inflammatory medications, pain medications, physical therapy, and a home exercise program. Tr. 447, 451. On July 26, 2017, Plaintiff submitted to an MRI for her left hip. Tr. 350. There was no evidence of any hip injury, fracture, arthritis, edema, atrophy, bursitis, or hernia; however, a large mass was in the pelvis, inseparable from the uterus, a potentially large fibroid. Tr. 350.

On August 15, 2017, Plaintiff returned to Dr. Sanders complaining of "knots in [her] l[eft] leg." Tr. 370. Plaintiff also had back pain, but no weakness in the extremities. Id. She was prescribed hydrocodone for pain. Tr. 371. One week later, Dr. Sanders examined Plaintiff and found normal range of motion in her spine though she reported she experienced less than 10% relief with the injections lasting for a few days. Tr. 454. Plaintiff's strength in her quadriceps, hamstring, and plantar flexion ankle eversion were all "5/5" with normal muscle tone. Tr. 455. Plaintiff was provided with a note to excuse her from work until September 6, 2017. Tr. 457.

Plaintiff received injections on September 5, 2017, and reported some relief of symptoms. Tr. 458-459. Plaintiff was again examined on September 20, 2017, made similar reports of pain and claimed she was not receiving any relief with six weeks of conservative treatment measures. Tr. 403.

Dr. Roberts recommended facet injections (LFI) from L3-S1. Id.; 430-31. Plaintiff's range of motion in her spine was normal; and the strength of 5/5 and normal muscle tone remained in her extremities. Tr. 404. Dr. Roberts ordered the injections and a back brace for Plaintiff. Tr. 405. Plaintiff had trigger point injections performed on September 28, 2017. Tr. 408-09. On October 10 and October 24, 2017, Plaintiff received steroid intra-articular injections. Tr. 410-16, 429. Dr. Roberts confirmed a lack of extremity weakness; and Plaintiff felt some relief of symptoms from the injection. Tr. 415.

On October 31, 2017, Dr. Roberts' office spoke with Plaintiff about the back brace, but she declined and said she did not want it. Tr. 417. Plaintiff was examined on November 7, 2017, making the same complaints about her pain. Tr. 418. She did acknowledge that she received greater than 70% relief for a few days after the procedures. Id. Again, Plaintiff's range of motion in her spine was normal; and the "5/5" strength and normal muscle tone remained in her extremities. Tr. 419-20. On November 14, 2017, Plaintiff presented complaining of right hip pain and received injections. Tr. 422-23, 427-28. On December 11, 2017, Plaintiff again received injections, tolerated the procedure well, and felt relief of symptoms. Tr. 432-33.

On January 8, 2018, Plaintiff returned to Dr. Roberts and reported that she continued to have pain but that the injections help. Tr. 474. Plaintiff confirmed that relief lasted one week and LESI provided her with 50% relief for a few days. Id. She requested to continue to be off from work due to her pain. Id. While Dr. Roberts accommodated the request he noted, "this DOES NOT indicate that the patient has been deemed disabled as an FCE would be required to make a true assessment of that." Id. Plaintiff's gait was described as "unable to perform as needs assistance," but her spinal alignment, posture, hips were normal. Tr. 475. The range of motion in Plaintiff's spine was grossly limited with pain; and the strength in her lower extremities was "5/5" with normal muscle tone. Id. One week later, Plaintiff received a LESI and felt relief of symptoms from the injection. Tr. 479-80.

On January 9, 2018, Dr. Roberts completed the continuing disability claim form attesting to Plaintiff's functional abilities. Tr. 88-89; 196-197; 199. Roberts noted that, occasionally, Plaintiff was capable of standing (less than three hours per day), walking, sitting, kneeling, twisting, bending, stooping, reaching above shoulder level, but could never operate heavy machinery. Tr. 196. Depending on Plaintiff's pain level she might be able to perform these tasks continuously. Id. Plaintiff was capable of occasionally pushing, pulling, and lifting up to ten pounds. Id. Treatment options were still being

evaluated, including a "referral for neuro . . . evaluation, possible spinal cord stimulator trial." Id.

On January 25, 2018, Plaintiff returned to Dr. Roberts for a follow-up appointment. Tr. 435. She reported uncontrolled pain, but on examination "her pain is mostly discogenic and radicular in nature" supporting a conclusion that treatment "helped her facetogenic back pain." Tr. 435. More recently, the LESI provided 50-60% relief for two weeks. Id. It was noted that Plaintiff's gait was "antalgic" that the range of motion in her spine was "grossly limited and with pain. Tr. 436-37. Dr. Roberts referred Plaintiff to Dr. Garcia for a surgical consultation and signed a certification of total and permanent disability form. Tr. 436. According Dr. Roberts' addendum dated February 5, "as of January 25, 2018, [Plaintiff] is permanently disabled. Will not be returning to work." Tr. 197.

In a physical capacities evaluation dated February 7, 2018, less than one month after the assessment of Plaintiff's functional abilities, Dr. Roberts' opinion changed: Plaintiff could only stand for less than two hours in an eight-hour workday, was *limited* in pushing or pulling with her upper and lower extremities, and could *never* stoop. Tr. 202; 470. Roberts opined that Plaintiff could not perform sedentary work activities for more than two hours per day. Tr. 204; 473. According to Dr. Roberts, Plaintiff's pain is "chronic" and

"constant" radiating through the left leg to the ankle, "throbbing, numbness, and tingling." Id. Roberts detailed the clinical findings as:

> L4/5 desiccation; broad bulge H12 L5/S1 desiccation broad bulge, severe bilateral facet arthropathy at L5/S1 w/periarticular bone marrow edema & fluid w/in both facet joints. Physical Exams – L spine tender to palpitation ROM grossly limited. Referred to neurosurgeon for surgical options including spinal cord stimulator trial.

Tr. 204.

On March 6, 2018, Plaintiff returned to Dr. Roberts for a follow-up visit. Tr. 485, 510. Again, Dr. Roberts noted Plaintiff's pain was mostly discogenic and radicular in nature" supporting a conclusion that treatment "helped her facetogenic back pain" and that injections provided 50-60% relief for two weeks. Id. Plaintiff reported that Dr. Garcia told her "he has nothing to offer from a surgical standpoint." Id.; 511 Plaintiff's medications were continued. Tr. 486. In the March 12, 2018, addendum to the disability form, Dr. Roberts assessed Plaintiff as having "severe limitation of functional capacity capable of minimum sedentary activity depending on pain level." Tr. 198. Plaintiff's diagnosis included lumbago, lumbar facet joint syndrome, lumbar radiculitis, and "trochanteric bursitis." Id. Dr. Roberts did not change his opinion that Plaintiff was permanently disabled. Tr. 200.

On July 23, 2018, Plaintiff returned to Dr. Roberts complaining of low back and right lateral leg pain rather than the previously reported left side

pain. Tr. 508. Plaintiff's gait was mildly antalgic and the range of motion in the lumbar region was limited due to pain. Tr. 509. On July 25, 2018, Plaintiff saw Dr. Roberts for an LESI procedure and reported pain. Tr. 505.

On July 18, 2018, Dr. Roberts completed a form in support of Plaintiff's claim for disability benefits through Manhattan Life. Tr. 90-92. Dr. Roberts opined that Plaintiff suffered from "back pain that radiates bilaterally to [her] legs" should be restricted from prolonged sitting, standing, walking; no bending, lifting, kneeling, crawling or squatting; and no overhead work. Tr. 90-91. Dr. Roberts indicated Plaintiff suffered from severe pain and limited range of motion. Tr. 90. Dr. Roberts confirmed that he provided Plaintiff with lumbar epidural steroid injections, medications, radiofrequency lesionings, lumbar facet injections, and trigger point and Bursa injections. Id. Dr. Roberts confirmed that the treatment served to maintain Plaintiff's pain levels and controlled her symptoms. Tr. 91. In Dr. Roberts' opinion, Plaintiff was "unable to return" to her work as a medical support clerk and was permanently disabled so that she should apply for Social Security disability benefits. Id.

On July 23, 2018, Dr. Roberts sent a letter to Plaintiff's counsel confirming that he initially evaluated Plaintiff on July 20, 2017, for persistent

back pain.[5] Tr. 93, 194. Roberts outlined Plaintiff's condition and treatment. Id. On August 8, 2018, Roberts outline the same in WH-380 form used for Plaintiff's application for FMLA coverage. Tr. 94-97. On August 27, 2018, Plaintiff received another LESI treatment. Tr. 502.

On September 20, 2018, Plaintiff saw Dr. Roberts for a "VS procedure," follow-up, and low back pain. Tr. 499. Plaintiff's "low back and right lateral radicular leg pain [were] much improved." Id. Plaintiff reported that the pain "is stable at this time." Id. It was further noted that Plaintiff's latest LESI treatment allowed her to gain more than 40% relief from pain and lasted until this follow-up appointment, more than three weeks. Id. Plaintiff's pain also "improves with rest, ice, medications, stretching, and HEP." Tr. 500. Plaintiff's gait was forward flexed and mildly antalgic; and the range of motion in her lumbar region was limited due to pain. Id. Strength in her extremities was "5/5" and muscle tone was normal. Id. During all appointments, Plaintiff was alert.

Contrary to Plaintiff's assertions, the ALJ did not discount Dr. Roberts' opinions. Rather, the ALJ reviewed all the records discussed above and specifically cited to the treatments and examinations by Dr. Roberts

---

[5] Several duplicate exhibits were provided to the Court. Accordingly, the Report provides the citation to each copy of the exhibit.

(identifying those records as 3F, 6F, 8F, 9F). Tr. 49-50. The ALJ specifically considered Dr. Robert's opinions of Plaintiff's "functionally ability" but found it was "not fully consistent with and supported by the overall record." Tr. 50. As explained above, Dr. Roberts found Plaintiff "subject to permanent work restrictions based on disc bulge and facet arthropathy with persistent back and leg pain." Id. Also, Dr. Roberts noted that a "functional capacity evaluation would be necessary for a true assessment of disability." Id. However, the medical record documents "gait antalgic" with the use of a cane but intact motor strength in the extremities and no evidence of lumbar instability. The ALJ sufficiently detailed Dr. Roberts' treatment for Plaintiff. Tr. 47-52. It is also worth noting, that Dr. Roberts' notations indicate that Plaintiff pain level improved over time with injection treatments. Therefore, the ALJ did not find Dr. Roberts' opinion "persuasive." Tr. 51. There is good cause for the ALJ to make this finding:  the evidence "supports a contrary finding" and the opinion is "inconsistent with [Dr. Roberts'] own medical records." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).

Although Plaintiff claims that the ALJ did not properly consider her pain level in denying her disability, this is not so. The ALJ did consider the

intensity, persistence, and limiting effects of her symptoms. In fact, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 49. However, the overall evidence did not support Plaintiff's claims; and "the intensity, persistence and limiting effects of these symptoms" was not consistent with the medical evidence. Tr. 49, 52. In fact, he medical records indicate otherwise. Repeatedly, Plaintiff presented to her medical providers with normal gait, normal lumbar spine range of motion, normal muscle tone and "5/5" strength in her extremities. Tr. 51-52. There is no documentation that Plaintiff suffered from any lumbar instability, motor weakness, or decreased ability that would support the level of daily restrictions Plaintiff reported at the hearing. Tr. 52. Moreover, there is no record of any emergent care. Plaintiff testified that she could sit in a chair for thirty minutes to elevate her legs, could lean on and push a grocery store cart, could carry a bag of groceries but did not do housework or cooking because her husband did it. Id.; 71-73. Plaintiff also admitted that she and her husband made a two-hour drive to the hearing location, which required sitting for a long period of time. Tr. 51, 72. Although Plaintiff reported that her back was "aggravate[ed]" and asked "can I stand" for relief, she admitted that she did not take her medications that morning. Tr. 69, 72. Nonetheless, Plaintiff's pain was not disabling.

Ultimately, the ALJ determined that the medical evidence did not support Plaintiff's claims to the point which would render her disabled and incapable of performing past relevant work as a medical clerk, which is classified as a sedentary, semi-skilled work. Tr. 51-52. The ALJ also accepted the testimony of the vocational expert – "that despite the limitations imposed by [Plaintiff's] severe impairments, she is still able to perform her past relevant work as generally performed." Tr. 52.

To the extent that Plaintiff asks this Court to reverse the Commissioner's decision, the Court does not have the authority to do so. As articulated above, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Bloodsworth, 703 F.2d at 1239. Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson, 284 F.3d at 1221; Chester, 792 F.2d at 131. For the reasons stated, the Court should find the ALJ's decision to deny Plaintiff's disability is based on substantial evidence in the record and should be affirmed.

## V.   Conclusion and Recommendation

It is respectfully RECOMMENDED that the Court determine that the findings of the ALJ are based upon substantial evidence in the record; and

the ALJ correctly applied the law. It is further RECOMMENDED that the decision of the Commissioner to deny Plaintiff's application for Social Security disability benefits be AFFIRMED.

IN CHAMBERS at Tallahassee, Florida, on January 6, 2021.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).